CERVECERÍA CORONA, INC., recurrente, *v.* JUNTA DE SALARIO MÍNIMO DE PUERTO RICO, recurrida; ASOCIACIÓN DE INDUSTRIALES DE PUERTO RICO, Amicus Curiae. ASOCIACIÓN DE PRODUCTORES DE RON DE PUERTO RICO, recurrente, *v.* JUNTA DE SALARIO MÍNIMO DE PUERTO RICO, recurrida; ASOCIACIÓN DE INDUSTRIALES DE PUERTO RICO, Amicus Curiae.

*Números:* O-69-138, O-69-141 *Resueltos:* 12 de marzo de 1970

*Cohen & Lespier,* abogados de la Asociación de Productores de Ron de Puerto Rico; *Beverley, Rodríguez, Estrella & Pesquera,* abogados de la Cervecería Corona, Inc.; *Walter Rivera Díaz* e *Ismael Soldevila,* abogados de la Junta de Salario Mínimo de Puerto Rico; *Rafael Martínez Álvarez, Jr., Rafael Martínez Álvarez, III* y *José A. Fernández Paoli,* abogados

de la Asociación de Industriales de Puerto Rico, Amicus Curiae.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La Cervecería Corona, Inc., y la Asociación de Productores de Ron de Puerto Rico, en representación de todas las empresas productoras de ron, impugnan la validez de la Primera Revisión (1968) del Decreto Mandatorio Núm. 72, aplicable a la industria de bebidas alcohólicas y de alcohol industrial, aprobado por la Junta de Salario Mínimo de Puerto Rico en 6 de mayo de 1969. Dicho decreto comenzó a regir el día 26 de mayo de 1969, con excepción de sus disposiciones respecto a salarios mínimos, vacaciones y licencia por enfermedad contenidas en los Arts. II, III y IV, respectivamente, que son retroactivas al 6 de febrero de 1969, conforme a la Sec. 14 de la Ley de Salario Mínimo, según enmendada por la Ley Núm. 116 de 21 de junio de 1968, 29 L.P.R.A. sec. 245m (Supl. 1968, pág. 59).

La revisión que se interesa va dirigida a lograr la anulación de (a) las disposiciones concediendo vacaciones y licencia por enfermedad a los empleados de la industria,[1] y (b) la inclusión de los viajantes vendedores entre los em-

---

[1] *"Artículo III—Vacaciones*

"Todo empleado tendrá derecho a vacaciones con sueldo completo que se hará efectivo al comenzar a disfrutarlas, a razón de los siguientes días laborables en que por lo menos haya tenido las siguientes horas de labor:

| *"Días al Mes* | *Horas de Labor* |
|---|---|
| 1¼ | 112 ó más |
| ½ | 60 a 111 |

"El empleado que trabaje menos de sesenta (60) horas en cualquier mes no acumulará vacaciones por dicho mes. Las vacaciones las disfrutará consecutivamente el empleado y se concederán anualmente en forma que no interrumpan el normal funcionamiento de la empresa, a cuyo fin el patrono establecerá los turnos correspondientes. El empleado no podrá exigir el disfrute de vacaciones hasta que las hubiere acumulado por un año. Mediante acuerdo por escrito entre patrono y empleado podrán acumularse durante más de un año, pero nunca por más de dos. En caso de que el empleado cese en su trabajo, el patrono le hará efectivo el total

pleados cubiertos por el decreto, excepto en cuanto se refiere a la fijación de salarios mínimos.(²) En cuanto respecta a la Cervecería Corona, Inc., su reparo se limita a la concesión

---

hasta entonces acumulado, aunque sea menos de un año. Si excediere del máximo de dos años aquí autorizado, el patrono deberá pagarle además dos (2) veces el sueldo correspondiente por el período en exceso de dichos dos años. Si el salario no se ha estipulado por días o períodos mayores, el sueldo correspondiente a cada día de vacaciones se computará multiplicando por ocho (8) el tipo por hora regular más alto que hubiere percibido el empleado durante el mes a que correspondan las vacaciones. A elección del empleado, las vacaciones podrán o no incluir los días no laborables comprendidos dentro del período en que haya de disfrutarlas. Será ilegal y nulo cualquier contrato mediante el cual el empleado renuncie, por dinero u otra causa, a disfrutar de hecho sus vacaciones. El patrono que no conceda a cualquiera de sus empleados las vacaciones a que tuviere derecho después de haberlas acumulado por más de dos (2) años, deberá concederle el total hasta entonces acumulado pagándole dos (2) veces el sueldo correspondiente por el período en exceso de dichos dos años."

"*Artículo IV—Licencia por Enfermedad*

"Todo empleado tendrá derecho a licencia por enfermedad con sueldo completo a razón de los siguientes días por cada mes en que haya tenido por lo menos las siguientes horas de labor:

| "*Días al Mes* | *Horas de Labor* |
|---|---|
| 1¼ | 112 ó más |
| ½ | 60 a 111 |

"El empleado que trabaje menos de sesenta (60) horas en cualquier mes no acumulará licencia por enfermedad por dicho mes. La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de treinta (30) días. Salvo en casos de fuerza mayor, el empleado deberá notificar a su patrono el hecho de su enfermedad el mismo día de su ausencia. Si el salario no se ha estipulado por días o períodos mayores, el sueldo correspondiente a cada día de licencia por enfermedad se computará multiplicando por ocho (8) el tipo por hora regular que estuviere percibiendo el empleado al momento de enfermarse. En caso de cualquier enfermedad que se prolongue por más de dos días, el empleado deberá acreditar la misma con certificación médica para tener derecho a disfrutar de la licencia aquí dispuesta."

(²) "*Artículo I—Definición de la Industria*

"Este decreto mandatorio es aplicable a *todos los empleados* en la *Industria de Bebidas Alcohólicas y de Alcohol Industrial* . . . .

". . . . . . . .

". . . . . . . .

". . . . . . . .

"No incluye, en cuanto a salarios mínimos se refiere, a los empleados que trabajen en capacidad 'bona fide' como *viajantes—vendedores*."

de vacaciones y licencia por enfermedad a razón de medio día por cada mes en que el empleado haya trabajado entre 60 y 111 horas, por alterar ello lo que respecto a estos beneficios proveía el Art. VII(b) y (c) del Decreto Mandatorio Núm. 24, 29 R.&R.P.R. sec. 245n–447(b) y (c), para la industria de cerveza, que continuó vigente conforme a la Sec. 40(b) de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 246k(b), al aprobarse los Decretos Núms. 30 y 72 en 11 de septiembre de 1957 y 15 de enero de 1965. La Asociación de Productores de Ron sostiene que no son válidas en su totalidad las disposiciones sobre vacaciones y licencia por enfermedad.([3])

—A—

Las Disposiciones sobre Vacaciones y Licencia
por Enfermedad

—1—

La legislación original sobre salario mínimo—Ley Núm. 8 de 5 de abril de 1941 (Leyes, pág. 303)—autorizó a los comités de salario mínimo a estudiar e informar a la Junta de Salario Mínimo, y a ésta a fijar, entre otras cosas, las condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar de los empleados y trabajadores en las distintas ocupaciones, negocios e industrias. Durante quince años dicho organismo estableció como parte de los decretos aprobados condiciones de trabajo, tales como la fijación de jornadas de trabajo, garantía de com-

---

([3]) El Decreto Núm. 30, 29 R.&R.P.R. secs. 245n–521 a 523, aplicable a la industria de bebidas alcohólicas, que fue aprobado con posterioridad a la Ley de Salario Mínimo de 1956, no contenía disposiciones sobre estas materias, con la salvedad indicada respecto a la industria de cerveza. Tampoco contenían disposiciones al efecto los Decretos Núms. 64, 29 R.&R.P.R. secs. 245n–851 y 852, aplicable a la industria de bebidas alcohólicas y de alcohol industrial, y Núm. 65, 29 R.&R.P.R. secs. 245n–861 y 862, aplicable a la industria de bebidas alcohólicas para el comercio local.

pensación mínima, pago por días feriados, vacaciones, suministro de facilidades sanitarias e higiénicas y licencia por enfermedad. (⁴) La vigente Ley de Salario Mínimo, Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. secs. 245 a 246m, evidenció una nueva política pública en cuanto a la intervención que correspondía al Estado en la formulación de las normas y condiciones de trabajo. Consciente del desarrollo y fortalecimiento de las uniones obreras—propiciado por la Ley de Relaciones del Trabajo, Núm. 130 de 8 de mayo de 1945, 29

(⁴) Los siguientes decretos fijaban el derecho de los empleados a vacaciones y licencia por enfermedad:

| *Núm.* | *29 R.&R.P.R. sec.* | *Aplicable a* | *Fecha de Aprobación* |
|--------|---------------------|---------------|------------------------|
| 4 | 245n–58 | Servicio de Hospitales, Clínicas o Sanatorios | 6/12/51 |
| 6 | 245n–98 | Negocio de Restaurantes, Cantinas y Fuentes de Soda | 12/2/54 |
| 7 | 245n–117 | Negocio de Teatros y Cines | 9/16/53 |
| 8 | 245n–138 | Comercio al por Menor | 6/28/55 |
| 12 | 245n–195 | Servicio de Transporte | 12/4/46 |
| 13 | 245n–214 | Negocio de Tren de Lavado y Limpieza de Ropa | 6/11/47 |
| 16 | 245n–275 | Comercio al Por Mayor | 8/24/49 |
| 18 | 245n–315 y 316 | Industria de la Leche | 11/27/50 |
| 22 | 245n–398 | Empleados del Negocio de Hoteles | 8/6/52 |
| 23 | 245n–427 | Industrial Heladera | 12/11/52 |
| 24 | 245n–447 | Industria de Cerveza | 6/28/54 |

Los siguientes decretos fijaban el derecho a vacaciones únicamente:

| *Núm.* | *29 R.&R.P.R. sec.* | *Aplicable a* | *Fecha de Aprobación* |
|--------|---------------------|---------------|------------------------|
| 9 | 245n–155 | Industria del Pan, Galletas, Repostería y Pastas de Harina | 4/30/45 |
| 14 | 245n–234 | Industria de Muebles y Otros Productos de Madera | 8/11/48 |
| 15 | 245n–254 | Industria de Canteras | 10/22/48 |
| 20 | 245n–356 | Industria de Impresos, Publicaciones y Otras Artes Gráficas | 9/5/51 |
| 21 | 245n–376 | Industria de Manufactura de Artículos de Aguja para el Comercio Local | 10/9/52 |

L.P.R.A. secs. 61 a 76, que reconoce y protege los derechos de los obreros a organizarse, negociar colectivamente y llevar a cabo actividades concertadas para su propio beneficio, en conjunción, en su aplicación a las industrias en el comercio interestatal, con la Ley de Relaciones Obreras federal, 29 U.S.C. sec. 141—la Asamblea Legislativa prefirió limitar la acción pública a la fijación de salarios mínimos, dejando al campo de la negociación colectiva ([5]) todo lo referente a la fijación de las otras condiciones de trabajo, y, entre ellas, las relativas al derecho a vacaciones y licencia por enfermedad, *Marrero Cabrera* v. *Caribbean Refining Co.*, 93 D.P.R. 250, 261 (1966). Sin embargo, expresamente proveyó que las disposiciones contenidas en los decretos mandatorios vigentes a la fecha de la aprobación de la ley que no fueran las relativas a salario mínimo, subsistirían en toda su fuerza y vigor, a pesar de que la Junta posteriormente pudiera variar los tipos de salario mínimo, Sec. 40(b), 29 L.P.R.A. sec. 246k(b); *Martín Santos* v. *C.R.U.V.*, 89 D.P.R. 175 (1963).

En 7 de marzo de 1968 se presentó el P. de la C. 1085, cuyo título leía como sigue:

"Ley para enmendar el inciso (G) de la Sección 1, el inciso (A) de la Sección 10, el inciso (A) de la Sección 11, el primer párrafo de la Sección 12, la Sección 14, el inciso (A) de la Sección 15, el primer párrafo de la Sección 17, la Sección 19, los incisos (A) y (B) de la Sección 21, la Sección 26, el inciso (F) de la Sección 29 y la Sección 38 de la Ley núm. 96 de 26 de junio de 1956, según enmendada, conocida como la Ley de Salario Mínimo de Puerto Rico."

---

[5] En el informe correspondiente se consignó expresamente como uno de los objetivos del proyecto el de "Limitar los deberes y facultades de la Junta de Salario Mínimo a la fijación y revisión de salarios mínimos exclusivamente, eliminando el estudio y determinación de otras condiciones del trabajo lo cual haría más lento el procedimiento administrativo y que corresponde más bien al campo de la contratación colectiva." Diario de Sesiones, 1956, vol. 8, t. 3, pág. 1065. Véase además el párr. (e) de la declaración de principios de la ley, 29 L.P.R.A. sec. 245.

En cumplimiento de la Regla XV del Reglamento de la Cámara de Representantes, (⁶) por tratarse de enmiendas por adición, en el proyecto mencionado aparece repetidamente subrayada la frase "condiciones de trabajo", (⁷) ya que su propósito era conferir autoridad a la Junta de Salario Mínimo para, además de la fijación de salarios mínimos, establecer en los decretos condiciones de trabajo.

Referido a la Comisión del Trabajo se recomendó la aprobación de la medida con una enmienda fundamental que consistió en autorizar a la Junta a conceder específicamente vacaciones y licencia por enfermedad, en lugar de, en sentido amplio, establecer condiciones de trabajo en general. Diario de Sesiones, 1968, pág. 1332. En el informe correspondiente de la Comisión de Trabajo se expresó:

"El Proyecto de la Cámara 1085 enmienda la Ley de Salario Mínimo de Puerto Rico para facultar a la Junta de Salario Mínimo para reglamentar lo concerniente al disfrute de vacaciones y licencia por enfermedad en adición al salario mínimo, en los decretos que apruebe.

La primera Ley de Salario Mínimo, Ley 8 de 5 de abril de 1941, que estuvo en vigor desde julio de ese año hasta junio de 1956, concedía a la Junta la facultad de establecer condiciones de trabajo. Al amparo de esa ley se aprobaron 24 decretos de salario mínimo cada uno de los cuales contenía, además de salarios mínimos, disposiciones sobre otras condiciones de trabajo. Entre esas disposiciones se encuentra la fijación de jornada de trabajo, vacaciones, licencia por enfermedad, garantía de compensación mínima semanal o diaria, pagos por días feriados que no se trabajen y otras.

_____

(⁶) ". . . Cuando se trate de enmendar alguna ley vigente, las palabras que se adicionen al estatuto deberán aparecer subrayadas y las palabras que se eliminan del mismo aparecerán entre llaves. No se recibirá en la Secretaría ningún proyecto o resolución que no cumpla con estos requisitos. . . ."

(⁷) En la enmienda propuesta al primer párrafo de la Sec. 12, al disponer la preparación por el comité correspondiente del informe conteniendo sus conclusiones y un proyecto de decreto recomendando el tipo de salario mínimo, se insertó "y las condiciones de trabajo que deban establecerse, inclusive vacaciones y licencia por enfermedad".

De los 24 decretos aprobados al amparo de esa ley solamente 16 contienen disposiciones sobre vacaciones. Se estima que actualmente esas disposiciones aplican a unos 84,000 trabajadores lo que representa alrededor del 21 por ciento del total de personas asalariadas en la industria privada, que asciende a 400,000.

Por otro lado, solamente 10 decretos contienen disposiciones sobre licencia por enfermedad los cuales aplican actualmente a unos 71,000 trabajadores, el 18 por ciento de los trabajadores asalariados en la industria privada.

La Asamblea Legislativa al aprobar en 1956 la vigente Ley de Salario Mínimo, que privó a la Junta de la facultad de aprobar condiciones de trabajo, tuvo la intención de estimular el crecimiento del movimiento obrero organizado. Se estimó entonces que limitando la intervención del estado en la obtención de condiciones de trabajo más favorables para los trabajadores, se estimularía el crecimiento del movimiento obrero organizado y esas conquistas se lograrían mediante la contratación colectiva. La Asamblea Legislativa tuvo la intención también de acelerar los procedimientos de fijación y revisión de salarios mínimos de manera que los salarios en las distintas industrias de la isla pudieran ser revisadas por lo menos una vez cada dos meses.

Han transcurrido aproximadamente doce años desde que se aprobó la vigente Ley de Salario Mínimo. Es evidente que hasta ahora no se han logrado los propósitos que se perseguían. La organización sindical no se ha desarrollado como se anticipaba, más bien existe la impresión de que la proporción de trabajadores agremiados se ha reducido. Se estima que el número de trabajadores que han obtenido el derecho a vacaciones y a licencia por enfermedad mediante la contratación colectiva es muy limitada. Hay todavía grandes grupos no agremiados en la agricultura, en el comercio, la banca y los servicios que no tienen derecho a vacaciones y licencia por enfermedad.

Consideramos que se debe devolver a la Junta de Salario Mínimo la facultad de reglamentar lo concerniente al disfrute de vacaciones y licencia por enfermedad. El derecho a disfrutar de vacaciones y de licencia por enfermedad es esencial y debe estar garantizado por ley o decreto mandatorio. El devolverle a la Junta la facultad para que fije vacaciones y licencia por enfermedad, estaría a tono con la política de máxima flexibilidad seguida por nuestro gobierno en relación a la fijación de salarios

mínimos, política que permite la reglamentación en cada industria de acuerdo con las realidades sociales, económicas y de competencia de éstas.

Por otro lado, consideramos que el devolverle dichas facultades a la Junta no atrasaría el programa de revisión de salarios mínimos. La lentitud de la Junta bajo la primera ley se debió, a nuestro juicio, a la falta de recursos y de personal y al procedimiento cuasi judicial, largo y contencioso, que se seguía entonces. El procedimiento cuasi legislativo que se sigue actualmente permite una revisión rápida y efectiva."

—2—

Sostienen las recurrentes que la actuación de la Junta de Salario Mínimo al aprobar la primera revisión del Decreto núm. 72 es nula e ineficaz por los siguientes motivos:

(a) La Ley que autorizó su aprobación—Ley Núm. 116 de 21 de junio de 1968, *supra*—es inconstitucional porque viola lo dispuesto en la Sec. 17 del Art. III de la Constitución del Estado Libre Asociado de Puerto Rico en tanto el título de la misma no cumple con el requisito de expresar el asunto de la legislación;

(b) Presumiendo la constitucionalidad de la Ley Núm. 116, la Junta se excedió en sus poderes y facultades al actuar en forma contraria a la intención del legislador al aprobar la mencionada ley, vulnerando la política pública consagrada en el inciso (e) del Art. 1 de la Ley de Salario Mínimo, a saber, estimular la contratación entre patronos y empleados de forma que sirva de instrumento social para asegurar "aquellas otras condiciones de empleo" necesarias a la salud y bienestar de los trabajadores;

(c) La Junta actuó en exceso de las facultades que le confiere la Ley Núm. 116 al proveer para la concesión de vacaciones y licencia por enfermedad en exceso de lo previamente dispuesto en el Decreto Núm. 24, aplicable a la industria de cerveza, por ser ello contrario a lo dispuesto en el

Art. 40 (b) de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 246k;

(d) La Junta actuó sin facultad y en exceso de sus poderes al aprobar una norma uniforme para la concesión de vacaciones y licencia por enfermedad a todos los sectores de la industria de bebidas alcohólicas en lugar de establecer clasificaciones dentro de la industria tomando en consideración para ello importantes factores que distinguen los diferentes sectores;

(e) La Junta actuó sin facultad al conceder el derecho a acumulación de medio día laborable de vacaciones y licencia por enfermedad en cada mes en que el empleado haya trabajado por lo menos sesenta y hasta ciento once horas, incluyendo a aquellos empleados que trabajan tiempo parcial, apartándose así del espíritu de la Ley de Salario Mínimo y de anteriores pronunciamientos de la propia Junta contrarias a la acumulación de beneficios por empleados de tiempo parcial.

(a) La disposición constitucional que se alega ha sido infringida es la Sec. 17 del Art. III de la Constitución del Estado Libre Asociado, idéntica en su texto al párr. 8vo. del Art. 34 de la Carta Orgánica Jones, en cuanto provee que "No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, *el cual deberá ser claramente expresado en su título*". (Bastardillas nuestras.) Se arguye que, aunque el título de la ley expresa que se trata de enmiendas a varias secciones de la Ley de Salario Mínimo, en ningún lugar aparece claramente que se intente facultar a la Junta para conceder a los empleados vacaciones y licencia por enfermedad.

▇▇▇ Conforme hemos dicho en ocasiones anteriores sólo en un caso claro y terminante estamos justificados en anular una ley por deficiencias en su título en violación de la disposición constitucional transcrita, *Rivera* v. *Corte*, 62 D.P.R.

513 (1943); *Sunland Biscuit Co.* v. *Junta Salario Mínimo*, 68 D.P.R. 371, 381 (1948). Conviene recordar que el propósito del requisito constitucional es informar al público en general y a los legisladores en particular el asunto que es objeto de la ley, de forma que el primero pueda oponerse a su aprobación si la considera lesiva y los segundos estén en condiciones de emitir su voto conscientes del asunto objeto de legislación, *Rodríguez* v. *Corte*, 60 D.P.R. 919, 921–922 (1942); pero ello no quiere decir que el título debe contener una descripción minuciosa de lo que se intenta, sino que es suficiente que en términos generales exprese su propósito; que sea un índice de su contenido, pues sería impráctico que relacionase los diversos detalles que constituyen precisamente el texto de lo propuesto, *Pueblo* v. *Vázquez Bruno*, 93 D.P.R. 540, 543 (1966). Unido a lo expuesto, se intenta evitar la inclusión en el texto de materia incongruente, irrelacionada con la especificada en el título, "que la legislatura y el público puedan colegir del título que se aprobarán únicamente materias germanas con las expresadas en el mismo", *People* v. *Carey*, 170 N.W.2d 145, 149 (Mich. 1969). Véanse además, *In re Estate of Welch*, 457 P.2d 380 (N.M. 1969), y, Bernier, *Aprobación e Interpretación de las Leyes en Puerto Rico* (1963), págs. 63–69.

Cuando se trata de una ley enmendatoria la doctrina prevaleciente no requiere que en el título se expongan los cambios específicos que se intentan en virtud de la enmienda propuesta, siempre que la materia no sea remota o extraña a la de la ley original. De forma que cuando la ley básica comprende razonablemente la materia cubierta por la enmienda propuesta basta una referencia a la sección o artículo que se intenta enmendar. Sólo cualquier materia o asunto de carácter sustantivo que no sea germano con la sección o artículo especificado transgrediría la norma constitucional. *White* v. *State*, 440 S.W.2d 660, 665 (Texas, 1969); *Smith* v. *Davis*, 426 S.W.2d 827, 833 (Texas 1968); *Tom and*

*Jerry, Inc.* v. *Nebraska Liquor Control Com'n*, 160 N.W.2d 232, 238 (Neb. 1968); *Clutts* v. *Jefferson County Board of Zoning Adjust.*, 210 So.2d 679 (Ala. 1968). *Laboy* v. *Corp. Azucarera Saurí & Subirá*, 65 D.P.R. 422 (1945), en que se fundan las peticionarias, precisamente ilustra esta excepción, por tratase allí de una clara desviación del propósito de la ley original, como era la incorporación por enmienda a un artículo del Código Penal de disposiciones que imponían una responsabilidad de orden civil.

Aplicadas las normas expuestas a la situación que consideramos, forzoso es concluir que el apuntamiento de las recurrentes no es procedente. Cuando menos puede afirmarse que la enmienda se refiere a materias germanas, sugeridas por y suplementarias de las distintas secciones enmendadas. No era desusado que al organismo al que se le encomienda la función del Estado de velar en la distribución del ingreso estatal, por el bienestar de los empleados y trabajadores se le atribuyera nuevamente la función de fijar, como parte de los decretos, condiciones relativas al disfrute de vacaciones con paga y licencia por enfermedad. Ya parece haber aceptación general de que estos beneficios son tan parte del salario como el estipendio que regularmente se recibe por la labor rendida. *Hilton Hotels* v. *Junta Salario Mínimo*, 74 D.P.R. 670, 722 (1953). Como cuestión de hecho el factor principal que se considera para su fijación es la capacidad y habilidad de la industria para pagar estos beneficios adicionales, según ella resulta de los mismos estudios económicos que se utilizan para la fijación del salario mínimo.

No podemos convenir en que el título de la Ley Núm. 116 no advertía adecuadamente al público y a los legisladores del intento de enmendar la Ley de Salario Mínimo. Si bien en esencia entrañaba un cambio en la política pública, cosa innegable, era completamente germano con la legislación básica. En cuanto se refiere a los legisladores el propósito de introducir materia extraña en la legislación propuesta ha

disminuido notablemente con la adopción de los requisitos reglamentarios sobre la forma de enmendar la legislación vigente—véase el escolio 6—y, además, por la exigencia de la presentación de informes por las comisiones que consideran la medida. Visto el historial legislativo que reseñamos previamente difícilmente puede decirse que los legisladores que unánimemente votaron a favor de la Ley Núm. 116 no lo hicieron conscientemente y plenamente advertidos de que las consecuencias de su actuación era facultar a la Junta de Salario Mínimo a conceder vacaciones y licencia por enfermedad en los decretos que en adelante aprobase. En cuanto al público interesado se refiere, en el alegato sometido por la Asociación de Industriales de Puerto Rico, como *amicus curiae*, se dice que tanto ella como otras partes afectadas solicitaron la celebración de vistas públicas sobre el proyecto, petición que fue desoída por las comisiones legislativas. Mas ello indica que estaban igualmente alertados a lo que se proponía en virtud de dicha pieza legislativa.

(b) Se sostiene que la Junta se excedió en sus facultades al actuar en forma contraria a la intención del legislador expresada en el inciso (e) del Art. 1 de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 245, que dice "Se declara, además, que es la política de la Asamblea Legislativa de Puerto Rico estimular la contratación colectiva entre obreros y patronos que sirva de eficaz instrumento social para elevar progresivamente el nivel de los salarios mínimos, reducir la jornada de trabajo y asegurar aquellas otras condiciones de empleo necesarias a la salud y bienestar de los trabajadores."

No es necesario detenernos en la consideración de este fundamento de impugnación. Basta leer el informe de la rama legislativa que consideró el P. de la C. 1085, previamente transcrito, para darse cuenta que si algo ha hecho la Junta es seguir fielmente el propósito que animó a la Asamblea Legislativa a aprobarlo. Precisamente esta declaración de política pública contenida en el inciso (e) fue abandonada por no

haber producido la negociación colectiva los resultados que se deseaban. Cabe recordar, además, que la Ley Núm. 96 de 26 de junio de 1956, *supra,* no respondió primordialmente al propósito apuntado, sino que más bien, tendió a evitar la aprobación de legislación federal que se vislumbraba en materia de salario mínimo para industrias establecidas localmente que se dedicaban al comercio interestatal. ([8])

 (c) Sostiene la Cervecería Corona, Inc., que la facultad concedida a la Junta para conceder vacaciones y licencia por enfermedad se refiere a aquellas industrias o partes de industrias en que no se hubieren fijado tales beneficios por decretos anteriores a 1956, invocando para ello lo provisto en el párr. (b) del Art. 40 de la Ley de Salario Mínimo, *supra.*

No podemos favorecer esta interpretación miope que se propone. El párr. (b) del Art. 40 era necesario para preservar unos beneficios ya concedidos a los empleados de ciertas industrias y que éstos venían disfrutando desde hacía tiempo. No era razonable ni compatible en la política pública del mejoramiento de las condiciones de vida de los trabajadores que se eliminaran, vista la facultad limitada que se concedió a la Junta desde la aprobación de la nueva ley para la variación exclusivamente de tipos de salario mínimo. Ello no significa que se deseara eternizar los beneficios previamente concedidos. El cambio de política pública respecto a la intervención de la Junta en la determinación de éstos necesariamente requiere que pueda alterar los ya existentes en decre-

---

([8]) El inciso (d) de la declaración de principios de la Ley de Salario Mínimo dice:

"Se declara también que es la política de esta ley que el nivel de salarios mínimos para trabajadores en industrias que produzcan o exporten sus productos para ser vendidos en los Estados Unidos en competencia con industrias allí situadas, debe igualarse o aproximarse, hasta donde sea posible, al de los salarios mínimos dispuestos en esta ley para los trabajadores en las respectivas industrias competidoras."

Véase, el escolio 5 anterior.

tos anteriores. Esta alteración, que guarda íntima relación con las condiciones económicas de la industria en particular, bien puede ser para aumentar o disminuir el derecho que se había determinado. Cualquier otra interpretación podría conducir a resultados discriminatorios e indeseables.

Se arguye que es significativo que el legislador al hablar de las vacaciones y licencia por enfermedad utilizara el vocablo *"concesión"* mientras al referirse a salario mínimo dijese "fijación o *revisión"*. Este argumento no tiene más alcance que el de un curioso ejercicio semasiológico.

(d) Este apuntamiento—la aprobación de normas uniformes sobre vacaciones y licencia por enfermedad en lugar de establecerse clasificaciones dentro de la industria—parte de la base de que tanto el comité al recomendar como la Junta al aprobar se negaron a sí mismos la facultad de establecer tales clasificaciones por no haberse enmendado expresamente la Sec. 16 de la ley, 29 L.P.R.A. sec. 245o, que en su parte pertinente continúa proveyendo que "Los comités pueden también recomendar salarios mínimos diferentes para varias zonas o regiones o para varias categorías o clases de la misma industria cuando, a su juicio, tal diferenciación pueda ser aconsejable debido a las condiciones existentes entre las zonas, regiones o categorías de la misma industria, siempre que tal acción no conceda ventajas de competencia a otras zonas, regiones o categorías de la misma industria. El tipo recomendado será uniforme para toda clase, categoría, zona o región de la industria de que se trate."

■ No se nos ha señalado, ni hemos advertido en nuestra revisión del extenso récord de los procedimientos conducentes a la aprobación del decreto, que se adoptara la posición señalada. El informe del comité que estudió la industria revela, por el contrario, que la decisión de recomendar normas uniformes sobre vacaciones y licencia por enfermedad fue deliberada, debido a que tal determinación encontraba sólido apoyo en el estudio económico del estado de situación de los esta-

blecimientos que se consideraron como muestra.(⁹) Al efecto dice:

"Luego de *analizar todos los datos y los testimonios* recibidos durante la audiencia pública, el Comité acordó que todas las recomendaciones que se hagan en lo referente a salario mínimo, vacaciones y licencia por enfermedad *serán uniformes* para todos los trabajadores de la industria." (Bastardillas nuestras.)

Procede destacar que al concederse el derecho a vacaciones y licencia por enfermedad a todos los trabajadores de la industria que hubieren tarabajado 112 ó más horas mensuales se adoptó la norma que desde hacía cerca de quince años se había prescrito para los empleados de la industria cervecera, a pesar de que este sector resultó ser el de menor beneficio económico—7.5% sobre capital y sobrante—en comparación con la industria del ron—11.1% sobre capital y sobrante. (Exh. J-6.) Cualquier diferencia que se establezca en estos beneficios adicionales debe fundarse en sólidas razones de incapacidad económica de determinado sector de la industria para sufragarlos.

(e) Finalmente, se pretende por la Asociación de Productores de Ron atribuir a la Junta que ha actuado en forma discriminatoria en la revisión del Decreto Núm. 72 al permitir la acumulación de vacaciones y licencia por enfermedad a empleados que denomina "de tiempo parcial", mientras en otras industrias rechazó expresamente este criterio. Al efecto llama nuestra atención al acuerdo adoptado en 10 de diciembre de 1968 con relación al Decreto Mandatorio Núm. 42 (Cuarta Revisión), aplicable a la industria del comercio al por menor. (¹⁰) Sin embargo, como señala la Junta en su ale-

---

(⁹) Se recomendó un salario mínimo de $1.60 por hora. El estudio reveló que el salario promedio que la industria estaba pagando era de $1.803 por hora.

(¹⁰) Dicho acuerdo dice:

"Por votación unánime se acuerda devolver al Comité para su reconsideración y por las razones que más adelante se exponen, las recomendaciones no aprobadas por la Junta . . . .

gato, este acuerdo se refería a una clase de empleados especiales de dicha industria, que no se encuentra entre los de la industria de bebidas alcohólicas, a saber, los estudiantes aprendices en el programa de educación en distribución y mercadeo del Departamento de Instrucción Pública y a aquellos empleados de capacidad disminuida o aprendices a quienes se refieren las Secs. 22 y 23 de la Ley de Salario Mínimo, 29 L.P.R.A. secs. 245u y 245v. No obstante al aprobarse la versión final del referido decreto, en su Art. VI relativo a vacaciones y licencia por enfermedad, 29 R.&R.P.R. sec. 245n-646, con vigencia en 27 de febrero de 1969, se estableció diferencia en cuanto a dichos derechos entre los empleados que trabajen por lo menos 120 horas mensuales y aquellos que trabajen entre 80 y 120 horas durante el mismo período.

Conviene apuntar que desde la vigencia de la Ley Núm. 116 de 23 de junio de 1968, *supra*, la Junta de Salario Mínimo ha aprobado varios decretos concediendo el derecho a vacaciones y licencia por enfermedad. En algunos, se ha establecido una norma fija; ([11]) en otros, se ha hecho depender

"La Junta es de opinión que el reconocimiento del hecho de fijar vacaciones a trabajadores con un número limitado de horas de trabajo al mes se aparta del espíritu de la Ley que es el de permitir al trabajador el disfrute de un descanso razonable después de un largo período de labor con el propósito de que pueda recuperar del cansancio físico y mental que esto ocasiona y evitar las consecuencias que ello acarrea tanto para el trabajador como para la industria en general.

"La concesión de vacaciones y de licencia por enfermedad a este tipo de trabajadores de jornada no cumpliría en nuestra opinión los propósitos que se persiguen. Por el contrario, limitaría *el empleo de estudiantes y de otro personal que obtienen ingresos adicionales trabajando en horario parcial.* Esta exposición obligaría a los patronos a llevar récords minuciosos sobre las horas trabajadas por cada empleado de tiempo parcial y desalentaría el empleo de éstos."

| ([11]) Arts. | Decreto Núm. | Industria de | Fecha Aprobación |
|---|---|---|---|
| III y IV | 60 (2a. revisión) | Banca, Seguros y Finanzas | Junio 10, 1969 |
| III y IV | 57 (4a. revisión) | Actividades Agrícolas en General | Junio 17, 1969 |

del número de trabajadores durante el mes([12]) o del número de años en el empleo. ([13]) Lejos de demostrar una actitud discriminatoria revela que las actuaciones de dicho organismo se fundan en las circunstancias particulares de cada industria.

—B—

## La Inclusión de los Viajantes Vendedores en los Beneficios de Vacaciones y Licencia por Enfermedad

Al explicar el alcance de la definición de la industria del Art. I del Decreto Núm. 72, y específicamente la exclusión de los viajantes vendedores en cuanto a la fijación de salarios mínimos, se expresó que:

"La definición que precede es sustancialmente igual a la que aparece en el Decreto Mandatorio Núm. 72 aplicable a la *Industria de Bebidas Alcohólicas y de Alcohol Industrial* vigente

| Arts. | Decreto Núm. | Industria de | Fecha Aprobación |
|---|---|---|---|
| V y IV | 25 (5a. revisión) | Madera y sus Productos, Muebles, Puertas y Ventanas de Metal | Julio 24, 1969 |
| II y III | 77 | Textiles y Productos de Textiles | Sept. 24, 1969 |
| VII y VIII | 47 (5a. revisión) | Restaurantes, Cantinas y Fuentes de Soda | Enero 20, 1970 |
| ([12]) | | | |
| III y IV | 74 | Servicios de Vigilancia y Protección | Oct. 10, 1968 |
| III y IV | 69 (2a. revisión) | Tabaco y Frutos Alimenticios | Mayo 8, 1969 |
| VI y VII | 42 (4a. revisión) | Comercio al por Menor | Junio 2, 1969 |
| IV y V | 73 (1a. revisión) | Comunicaciones | Julio 15, 1969 |
| ([13]) | | | |
| II | 76 | Cuero y Productos de Cuero y Relacionados | Sept. 18, 1969 |
| II | 75 | Corsés, Sostenes y Productos Relacionados | Sept. 24, 1969 |

desde el 4 de febrero de 1965. Uno de los cambios efectuados se refiere a que en la mencionada definición se excluía a los viajantes-vendedores de la misma. En la definición que ahora se aprueba se excluyen dichos empleados únicamente en cuanto a salarios mínimos se refiere ya que es la intención que a éstos les cubran las disposiciones sobre vacaciones y licencia por enfermedad que eventualmente se aprueben.

Los empleados que trabajen en capacidad bona-fide como viajantes-vendedores no están excluidos de la ley, pero por la naturaleza del trabajo que realizan, la Junta los excluyó expresamente de la definición de la industria en ocasiones anteriores pero únicamente para propósitos de la fijación de salarios mínimos que era la única facultad que tenía la Junta entonces.

La Ley 116 de 21 de junio de 1968 enmendando la vigente Ley de Salario Mínimo de Puerto Rico faculta a la Junta para fijar, en adición a los salarios mínimos, vacaciones y licencia por enfermedad.

El Decreto Mandatorio Núm. 24 aplicable a la Industria de Cerveza, vigente desde el 1 de agosto de 1954 aplica en cuanto a períodos máximos de labor y condiciones de trabajo a los trabajadores en la mencionada industria. Algunas de las disposiciones de dicho decreto cubren también a los viajantes-vendedores. Dichas disposiciones son las que se refieren a día semanal de descanso, vacaciones, licencia por enfermedad y otros. Estos empleados están excluidos expresamente de las disposiciones sobre salario mínimo, garantía de compensación mínima y períodos máximos de labor.

Por viajantes-vendedores se quiere significar a aquellos empleados que llevan a cabo, a nombre del patrono, negocios de ventas pero sin intervenir personalmente en la distribución o entrega de los artículos vendidos. Normalmente estos empleados prestan servicios fuera del establecimiento central; no retornan diariamente a la oficina central; nadie supervisa sus actividades una vez que salen a vender; usan su discreción en cuanto a esfuerzo y tiempo a invertirse en las actividades de ventas; y la propia naturaleza del empleo impide determinar las horas real y efectivamente trabajadas cada día."

En efecto, en el Decreto Núm. 72 original, se excluyó de sus disposiciones a los viajantes-vendedores, 29 R.&R.P.R. sec. 245n–931 (3), en cuanto a los salarios mínimos estableci-

dos. Sin embargo, los viajantes-vendedores de la industria de la cerveza conservaron, por operación de la Sec. 40 (b) de la Ley de Salario Mínimo, *supra*, el derecho a vacaciones y licencia por enfermedad que les había sido reconocido desde la vigencia en 1 de agosto de 1954 del Decreto Núm. 24, aplicable únicamente a dicha industria. (¹⁴) En los otros sectores de la industria de bebidas alcohólicas, específicamente en el de ron, no se habían concedido tales derechos a los empleados en los Decretos Núms. 30, 64 y 65, por haber sido aprobados después de 1956.

Argúyese que como las vacaciones y la licencia por enfermedad se hacen depender de la labor mensual realizada en término de *horas* de *labor*—1 1/4 día por mes en que se haya acumulado 112 horas de labor o más; 1/2 día por mes en que se haya acumulado de 60 a 111 horas de labor—y esta unidad de trabajo que determina la elegibilidad para obtener los beneficios es de difícil determinación en el caso de los viajantes vendedores, su inclusión por la Junta resulta en un ejercicio inautorizado de sus facultades. Se invoca *Espasas Diary, Inc.* v. *J.S.M.*, 96 D.P.R. 816 (1969) y 94 D.P.R. 816 (1967). Es cierto que en *Espasas* aludimos a la dificultad que representaba la constatación de las horas efectivamente trabajadas por los choferes vendedores y sus ayudantes como uno de los factores para, en la interpretación de la Ley Núm. 114 de 30 de junio de 1965, 5 L.P.R.A. sec. 1120, determinar que la Junta carecía de facultad para fijar salarios mínimos *por hora* a dichos empleados y que debía limitarse a fijar un salario por comisión. Cf. *A. D. Miranda, Inc.* v. *Falcón*, 83 D.P.R. 735 (1961). No es menos cierto que en dicha ley el legislador también proveyó que "Las disposiciones contenidas en las leyes y decretos aplicables a la industria de la leche y de

---

(¹⁴) La Cervecería Corona, Inc., no impugna específicamente la aplicación del decreto a los viajantes vendedores en cuanto a los beneficios mencionados.

la ganadería en cuanto a *vacaciones*, . . . *licencia por enferme-dad*, . . . subsistirán en toda su fuerza y vigor en cuanto a los vendedores y vendedores ayudantes." Y los decretos aplicables precisamente establecían la hora trabajada como la unidad determinante de elegibilidad para el aprovechamiento de dichos beneficios, Arts. V y VI del Decreto Núm. 18, aplicable a la industria de la leche, 29 R.&R.P.R. secs. 245n–315 y 316.

■ El hecho de que la determinación de estos derechos pueda ser difícil no quiere decir que su reconocimiento constituye una actuación en exceso de las facultades de la Junta. No creemos tampoco que el planteamiento tenga virtualidad si se considera que en un sector de la industria—el de la cerveza—ha operado durante más de quince años. Tal vez es aconsejable que se prescriba una fórmula más específica para la computación de las vacaciones y la licencia por enfermedad a los viajantes vendedores, pero su ausencia no tiñe de nulidad este aspecto del decreto.

*Se confirmará el Decreto núm. 72 (Primera Revisión), según aprobado por la Junta de Salario Mínimo de Puerto Rico.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.