| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VII | | |
| DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido<br><br>v.<br><br>FEDERACIÓN DE MAESTROS DE PUERTO RICO<br><br>Recurrente | KLRA202400165 | Revisión Administrativa procedente de la Comisión Apelativa del Servicio Público<br><br><br><br>Caso Número: PR-21-001 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

La parte recurrente, la Federación de Maestros de Puerto Rico, comparece ante nos solicitando que dejemos sin efecto la *Resolución* administrativa emitida por la Comisión Apelativa del Servicio Público (CASP), el 29 de febrero de 2024. Mediante la misma, el foro *a quo* ordenó el cierre y archivo de la *Petición de Representación* presentada por la recurrente.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I**

El 6 de mayo de 2016, la CASP certificó a la Asociación de Maestros de Puerto Rico-Local Sindical (AMPRLS), como el representante exclusivo de la Unidad Apropiada de Maestros y/o Personal Docente del Departamento de Educación de Puerto Rico. Estos subscribieron un convenio colectivo que estaría vigente hasta el 12 de agosto de 2019. Entre tanto, fue aprobada la Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico, Ley 3-

2017, 3 LPRA sec. 9391 *et seq.*, la cual dispuso que la vigencia de los convenios colectivos en el sector público sería extendida hasta el 30 de junio de 2021. Consecuentemente, el convenio colectivo suscrito entre la AMPRLS y la CASP quedó extendido hasta la aludida fecha.

Posteriormente, el 27 de abril de 2021, la parte recurrente presentó una *Petición de Representación* ante la CASP, solicitando convertirse en la representante exclusiva de la Unidad Apropiada de Maestros y/o Personal Docente del Departamento de Educación de Puerto Rico. En oposición, el 1 de junio de 2021, la AMPRLS presentó *Moción de Desestimación de Petición de Elección por Impedimento Legal y en Cumplimiento de Orden*. En la misma planteó que, el Artículo 8 de la Ley 3-2017, 3 LPRA sec. 9398, era claro en señalar que la extensión de los convenios colectivos constituía, a su vez, un impedimento para la presentación y celebración de elecciones de representación hasta el 30 de junio de 2021. De este modo, sostuvo que procedía desestimar la petición de representación, ya que, por haberse presentado el 27 de abril de 2021, la misma era prematura.

Por su parte, el 8 de junio de 2021, la parte recurrente presentó una *Réplica a Objeciones a la Elección de la AMPR*. Expuso que la petición de elección fue sometida de conformidad con el Reglamento de la Comisión de Relaciones del Trabajo, Reglamento Núm. 6385 de 29 de diciembre de 2001. En específico, aludió a lo dispuesto en la sección 303(C) del referido cuerpo normativo, la cual establece que las peticiones no podrían ser presentadas durante la vigencia de un convenio colectivo. Sin embargo, a manera de excepción, la antedicha Regla permite la radicación de una petición, si la misma se produce entre sesenta (60) a noventa (90) días, previo a la expiración de un convenio colectivo. Además, la parte recurrente argumentó que la prohibición establecida en la Ley Núm.

3-2017, *supra,* no impedía que una organización obrera peticionara unas elecciones de conformidad al aludido Reglamento. Por último, solicitó que, de considerarse que la petición fue presentada prematuramente, se le permitiera enmendar la petición una vez expirara el convenio.

El 2 de julio de 2021, la parte recurrida presentó *Moción para que se Tome Conocimiento Oficial de la Ley 9 de 30 de junio de 2021 y Reiterando Solicitud de Desestimación de Petición de Elección por Impedimento Legal.* En esta, solicitó que se tomara conocimiento de la aprobación de la Ley para Garantizar la Negociación Colectiva, Ley 9-2021, 3 LPRA sec. 9398 n, *et seq.* En específico, destacó que la aludida Ley, en la Sección 4.2 del Artículo 4, prolongaba el impedimento legal previamente existente para la radicación y celebración de elecciones sindicales. Al respecto, expresamente citó la antedicha disposición, que reza como sigue:

> Los convenios colectivos expirados al 30 de junio de 2021 o a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo. Dicha extensión constituirá impedimento para la radicación y celebración de elecciones de representación o de descalificación de un representante exclusivo de negociación.

3 LPRA sec. 9398 n.

Luego de evaluar los escritos de las partes, el 10 de noviembre de 2021, la CASP emitió una *Resolución* ordenando el archivo y cierre de la *Petición de Representación* radicada por la parte recurrente. En lo atinente, el organismo reconoció que la petición en controversia se presentó dentro del periodo provisto en el Reglamento Núm. 6385, *supra,* así como en cumplimiento con el interés sustancial del 30% de firmas requeridas para reclamar la celebración de una elección sindical. Sin embargo, la CASP expresó que, aunque la parte recurrente cumplió con los referidos criterios,

la aprobación de la Ley Núm. 9-2021, *supra,* tuvo el efecto de extender los convenios colectivos expirados al 30 de junio de 2021, por lo que, siendo tal la situación en el caso de autos, ello constituía un impedimento para la radicación y celebración de elecciones de representación.

Inconforme con la determinación, la parte recurrente acudió mediante un primer recurso de revisión judicial ante este Tribunal de Apelaciones.[1] El 13 de enero de 2022, un Panel Hermano emitió *Sentencia* mediante la cual desestimó el recurso por falta de jurisdicción, y se ordenó a la CASP notificar nuevamente el dictamen recurrido, a los fines de advertirle a la parte recurrente su derecho de revisión judicial. Posteriormente, el 29 de febrero de 2024, la CASP notificó nuevamente la resolución emitida.

Una vez subsanado el defecto procesal antes indicado, el 1 de abril de 2024, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial. En el mismo formula los siguientes planteamientos:

> Erró la CASP al aplicar retroactivamente la sección 4.2 de la Ley 9-2021, toda vez que la petición de elecciones fue presentada previa a la aprobación de esta ley y la vigencia de la misma es prospectiva.
>
> Erró la CASP al aplicar la sección 4.2 de la Ley 9-2021, cuando es a todas luces inconstitucional por atentar contra el derecho de libertad de asociación garantizado tanto por la Constitución de Puerto Rico, como la de los Estados Unidos.
>
> Erró la CASP al aplicar la sección 4.2 de la Ley 9-2021, cuando la misma contiene disposiciones que no cumplen con el Art. III, Sección 17 de la Constitución de Puerto Rico al contener más de un solo asunto y que el cual no está claramente expresado en el título de la ley.

Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

---

[1] KLRA202100651

**II**

**A**

La *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, 3 LPRA sec. 9101, *et seq.,* se promulgó con el propósito de declarar un estado de emergencia en el gobierno y adoptar un plan para manejar las consecuencias de la crisis fiscal y económica que atravesaba el país. Véase Exposición de Motivos, Ley Núm. 66-2014, *supra.* En lo aquí pertinente, el estatuto extendió la vigencia de las cláusulas no económicas de los convenios colectivos que estuviesen expirados a la fecha de comenzar la vigencia de la Ley, o que expiraran durante su vigencia. 3 LPRA sec. 9118. Además, la aludida Ley expuso que dicha extensión constituía un impedimento para la presentación y celebración de elecciones de representación. *Id.*

Posteriormente, el 3 de enero de 2017, fue aprobada la Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico, Ley Núm. 3-2017, 3 LPRA sec. 9391, *et seq.* Mediante esta, el Estado extendió nuevamente la vigencia de las cláusulas no económicas de los convenios colectivos hasta el 30 de junio de 2021 y reiteró que dicha extensión constituía un **"impedimento para la presentación y celebración de elecciones de representación"**. 3 LPRA sec. 9398 (Énfasis nuestro).

Previo a la expiración de los convenios colectivos que fueron extendidos por la Ley Núm.3-2017, *supra,* el 30 de junio de 2021 fue aprobada la Ley para Garantizar la Negociación Colectiva, Ley Núm. 9-2021, 3 LPRA sec. 9391, *et seq.*, con el propósito de garantizar el funcionamiento del Gobierno del Estado Libre Asociado de Puerto Rico y la continuidad de los servicios esenciales a la ciudadanía. Véase Exposición de Motivos de la Ley Núm. 9-2021,

*supra.* En lo pertinente, el aludido estatuto establece en la Sección 4.2 de su Artículo 4:

> Los convenios colectivos expirados al 30 de junio de 2021 o a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo. **Dicha extensión constituirá impedimento para la radicación y celebración de elecciones de representación o de descalificación de un representante exclusivo de negociación.**

3 LPRA sec. 9398 n. (Énfasis nuestro.)

Así, tanto la vigencia de los convenios colectivos como el impedimento para la radicación y celebración de elecciones de representación quedaron extendidos una vez más. Cabe destacar que, el Art. 2 de la Ley Núm. 9-2021, *supra*, establece que la aludida Ley tendrá primacía sobre cualquier otra. 3 LPRA sec. 9398 n.

**B**

Por otro lado, la Carta de Derechos de la Constitución de Puerto Rico establece que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares". Art. II, Sec. 6, Const. PR., LPRA, Tomo 1. De esta forma, la libertad de asociación se ha reconocido como un derecho fundamental, directamente relacionado a la dignidad y a la máxima plenitud de la personalidad del ser humano. *Delucca v. Col. Méd. Cirujanos y otros*, 213 DPR ___, 2023 TSPR 119 (2023); *Rodríguez Casillas et al. v. Colegio*, 202 DPR 428, 433 (2019). Así mismo, se ha establecido que el derecho a la libre asociación presupone, a su vez, el derecho de las personas a no asociarse. *Delucca v. Col. Méd. Cirujanos y otros*, supra; *Rivera Schatz v. ELA y C. Abo. PR II*, 191 DPR 791, 811-812 (2014). En lo aquí pertinente, mediante la aprobación de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley 45-1998, 3 LPRA sec. 1451, *et seq.*, según enmendada, la Asamblea Legislativa

reconoció el derecho de libertad de asociación a los empleados del sector público de las agencias del Gobierno a los fines de organizarse para negociar colectivamente.

Ahora bien, el derecho de asociación no es un derecho absoluto. *P.N.P v. De Castro Font II*, 172 PDR 883, 893-894 (2007). Sin embargo, por tratarse de un derecho fundamental, cualquier actuación del Estado deberá superar un escrutinio constitucional estricto. *Rodríguez Casillas et al. v. Colegio*, supra, págs. 449-450. Es decir, se presupondrá que la medida es inconstitucional y recaerá en el Estado el peso de la prueba de demostrar que la medida impugnada es válida. *Delucca v. Col. Méd. Cirujanos y otros*, supra; *San Miguel Lorenzana v. ELA,* 134 DPR 405, 425 (1993). Así, el Estado tendrá que demostrar que: (1) existe un interés apremiante que justifica la necesidad de su actuación; y (2) que no tenía a su alcance medidas menos onerosas para lograr ese interés. *Delucca v. Col. Méd. Cirujanos y otros*, supra*; Rodríguez Casillas et al. v. Colegio*, supra, pág. 450; *Rivera Schatz v. ELA y C. Abo. PR II*, supra, pág. 813.

## C

De otra parte, el Artículo III, Sección 17, de la Constitución de Puerto Rico, LPRA Tomo I, le confirió a la Asamblea Legislativa la facultad de aprobar leyes. *Delgado, Ex parte,* 165 DPR 170, 193 (2005). A su vez, estableció las normas que regulan el proceso legislativo correspondiente. En específico, el mismo reza:

> Ningún proyecto de ley se convertirá en ley a menos que se imprima, se lea, se remita a comisión y ésta lo devuelva con un informe escrito; pero la cámara correspondiente podrá descargar a la comisión del estudio e informe de cualquier proyecto y proceder a la consideración del mismo. Las cámaras llevarán libros de actas donde harán constar lo relativo al trámite de los proyectos y las votaciones emitidas a favor y en contra de los mismos. Se dará publicidad a los procedimientos legislativos en un diario de sesiones, en la forma que se determine por ley. No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto,

el cual deberá ser claramente expresado en su título, y toda aquella parte de una ley cuyo asunto no haya sido expresado en el título será nula.  La ley de presupuesto general sólo podrá contener asignaciones y reglas para el desembolso de las mismas. Ningún proyecto de ley será enmendado de manera que cambie su propósito original o incorpore materias extrañas al mismo. Al enmendar cualquier artículo o sección de una ley, dicho artículo o sección será promulgado en su totalidad tal como haya quedado enmendado. Todo proyecto de ley para obtener rentas se originará en la Cámara de Representantes, pero el Senado podrá proponer enmiendas o convenir en ellas como si se tratara de cualquier otro proyecto de ley.

Art. III, Sec. 17, Const. ELA, LPRA, Tomo 1.

En lo pertinente, la aludida cláusula establece la llamada "regla de un solo asunto". *Herrero y otros v. E.L.A.,* 179 DPR 277, 291 (2010). La misma exige que toda ley aprobada por la Asamblea Legislativa regule un solo asunto o materia. *Íd.* Además, aquel asunto que sea regulado en la ley, deberá estar adecuadamente expresado en su título, ya que, de lo contrario, la disposición de que trate se entenderá nula. *Herrero y otros v. E.L.A.,* supra; *Dorante v. Wrangler of PR*, 145 DPR 408, 427 (1998). El entendido doctrinal reconoce que el propósito primordial de la "regla de un solo asunto" es:

> …impedir la inclusión en la ley de materia incongruente y extraña, y a la vez poner en guardia contra la inadvertencia, la ocultación y el fraude en la legislación…evitar la práctica corriente en todas las legislaturas donde no existe tal disposición de incluir en la ley materias incongruentes que no tienen relación alguna entre sí o con el sujeto especificado en el título, a virtud de lo cual se aprueban medidas sin atraer atención que, si hubieran sido vistas, hubieran sido impugnadas y derrotadas […].

*Herrero y otros v. E.L.A.,* supra, pág. 292.

A tenor con la interpretación vigente, la referida cláusula previene la práctica legislativa conocida como el *logrolling,* es decir, el patrón de "concesiones mutuas en la aprobación de las leyes". *Herrero y otros v. E.L.A.,* supra, págs. 292-293.  En específico, por dicha conducta, los grupos minoritarios de legisladores combinan, en un solo proyecto de ley, distintas propuestas incongruentes entre

sí, con el fin de obtener una mayoría artificial de votos al momento de la aprobación de la medida legislativa de que trate, ello como producto de la unión de dichos grupos. *Íd.* Sobre este particular, el estado de derecho intima que tal práctica es cuestionable, puesto que, "cada una de las propuestas independientes, probablemente, no lograrían una mayoría legislativa por méritos propios". *Íd.*, pág. 293. Se entiende que "una de las modalidades más conocidas del *logrolling* son los llamados *riders*". *Íd.* Estos, son disposiciones de ley que no están relacionadas al asunto principal de la legislación y que no son favorecidas por la mayoría legislativa, por lo que las añaden en proyectos de ley que probablemente serán aprobados, ya sea porque son necesarios para el buen funcionamiento del gobierno o por su aceptación pública. *Herrero y otros v. E.L.A.,* supra, págs. 293-294.

Nuestro más Alto Foro ha expresado que el propósito del requisito de que la ley tenga un título que exprese el asunto regulado es: (1) prevenir la práctica del "*logrolling*"; (2) evitar los *"riders",* es decir que se aprueben disposiciones no advertidas en su título; (3) informar razonablemente a la ciudadanía sobre el asunto contenido en los proyectos de ley; (4) prevenir que ocurra ocultación o fraude en el proceso legislativo; y (5) evitar que se diluya el poder de veto del Ejecutivo. *Herrero y otros v. E.L.A.,* supra, pág. 295. Así, al momento de evaluar si una ley es válida a la luz de la aludida Sección 17 del Artículo III de nuestra Constitución y la "regla de un solo asunto", los tribunales deberán "auscultar todas sus disposiciones para determinar si éstas se relacionan entre sí y si son afines con el asunto que se expresa en su título". *Herrero y otros v. E.L.A.,* supra, pág. 296; *Cervecería Corona, Inc. v. J.S.M.,* 98 DPR 801, 812 (1970).

**III**

En la presente causa, la recurrente plantea que la CASP erró al emitir la *Resolución* recurrida, ello al indicar que el organismo aplicó de manera retroactiva a los hechos del caso las disposiciones de la Ley Núm. 9-2021, *supra*, a pesar de que el estatuto no incluye una cláusula de retroactividad. Por igual, plantea que la Sección 4.2 del Artículo 4 de la aludida Ley, atenta contra el derecho de libertad de asociación, garantizado por nuestra Constitución, por lo que debe declararse inconstitucional. Por último, sostiene que dicha Sección 4.2 del Artículo 4 debe ser declarada nula, por contravenir las disposiciones del Artículo III, Sección 17 de la Constitución de Puerto Rico, esto al, alegadamente, contener más de un asunto y no expresarlo así en el título. Habiendo examinado los referidos planteamientos a la luz de los hechos y del derecho aplicable, confirmamos el dictamen recurrido. Un examen del expediente de autos mueve nuestro criterio a sostener lo resuelto por el foro primario.

En principio, coincidimos con que procedía el cierre y archivo de la petición de representación presentada por la parte recurrente. Se desprende del expediente de autos que, al 27 de abril de 2021, fecha en la que esta presentó la petición de representación, se encontraba vigente la Ley Núm. 3-2017, *supra*, y que, al igual que la Ley Núm. 9-2021, *supra*, la misma contiene una prohibición expresa sobre la presentación de una petición de representación y la celebración de elecciones sindicales. Resulta además, que, al momento de la aprobación de la Ley Núm. 9-2021, *supra,* la CASP no había completado el proceso de evaluación de la petición de la parte recurrente, ni había emitido decisión alguna con relación a la misma. Lo anterior evidencia que no se aplicó retroactivamente la Ley en cuestión, puesto que, al momento de emitir su decisión, la CASP utilizó la ley vigente. Cabe destacar, que la prohibición para

la celebración de las elecciones aplicada por la CASP en su decisión, existía aún antes de entrar en vigor la Ley Núm. 9-2021, *supra*, ya que, según expuesto anteriormente, estaba contenida en la Ley Núm. 3-2017, *supra.*

Ahora bien, y partiendo de ello, disponemos que, tal cual se resolvió, en estricto derecho, la Sección 4.2 del Artículo 4 de la Ley Núm. 9-2021, *supra*, incluyó una prohibición explícita, no solo para la celebración de la elección de representación, si no, también, para la presentación de una petición de representación, prohibición que, conforme señalamos, se encontraba de igual manera expresa en la Ley Núm. 3-2017, *supra.* Siendo esto así, en efecto, tal cual la CASP correctamente dispuso, procedía el cierre y archivo de la petición de elección de representación en disputa.

Por su parte, respecto al planteamiento sobre la violación al derecho constitucional de libertad de asociación, diferimos de los argumentos de la parte recurrente. Según expuesto, el derecho a la libertad de asociación protege que una persona pueda pertenecer a una organización y, a su vez, que no esté obligado a formar parte de aquella que no le interese. En el presente caso, contrario a lo planteado por la recurrente, mediante la aprobación de la Ley Núm. 9-2021, *supra,* no se obligó, de manera alguna, a los empleados del Departamento de Educación a permanecer afiliados a la AMPRLS. La aludida Ley, no incluye prohibición alguna para que, aquellos empleados que deseen afiliarse, o desafiliarse de la organización, así lo hagan. De hecho, cualquiera de dichos cursos de acción, puede producirse en cualquier momento, sin que, para ello, la Ley imponga limitación. Así pues, concluimos que, en el presente caso, el Estado no incidió de manera alguna sobre el derecho a la libertad de asociación de la parte recurrente.

Finalmente, en cuanto al planteamiento de error de la parte recurrente sobre la violación al Art. III, Sec. 17, de nuestra

Constitución, resolvemos de igual forma que no le asiste razón. Sobre ello, la parte recurrente indicó que la Sección 4.2 del Artículo 4 de la Ley Núm. 9-2021, *supra*, incluyó disposiciones sobre más de una materia, sin que el título de la Ley advirtiera sobre ello, todo en contravención a la "regla de un solo asunto". Sin embargo, surge de la Exposición de Motivos de la Ley Núm. 9-2021, *supra*, que la misma fue aprobada con el propósito de garantizar la negociación colectiva, extender los convenios colectivos, y con esto, la protección a los servidores públicos. Al entender sobre ello, surge que, tal cual argumenta la parte recurrida en su comparecencia, la prohibición que la parte recurrente pretende impugnar ante nos, guarda una relación directa con el fin de la ley, el cual precisamente está contenido en su título. En consideración a ello, no podemos sino concluir que la sección impugnada no constituye "más de un asunto" o un asunto nuevo, tal cual propone la parte recurrente. Además, destacamos que la prohibición para la presentación de una petición de representación y para la celebración de elecciones sindicales, precisamente busca lograr que los convenios colectivos se extiendan, garantizando así la negociación colectiva. Siendo de este modo, no vemos cómo se puede intimar que medió una violación a la medida invocada.

En mérito de lo anterior confirmamos la *Resolución* recurrida. La misma es cónsona con el derecho aplicable a la materia que atendemos, por lo que, en ausencia de error alguno atribuible al tribunal primario, sostenemos lo resuelto.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones